## No. 160.

### SUCCESSION OF MARIE SAUX, WIFE OF JEAN MARIE TUJAGUE.

1. Where property has been sold under order of court, and a rule has been taken to erase a mortgage affecting the same, the question of appellate jurisdiction is determined by the amount of the mortgage, and not by the value of the property.
2. Where a community has been dissolved by the death of the wife, the surviving husband remains personally bound for the community debts; and the community creditors may have recourse against him and even levy upon his individual property.
3. The surviving husband, therefore, retains full control of the community property, and settles its affairs.
4. In such a case, until the community debts are paid, the heirs of the deceased wife have no absolute interest in the community property; no interest which can be legally recognized.
5. The community creditor, in such a case, may proceed against the community property without regard to the death of the wife.
6. Hence, the court having cognizance of the wife's succession cannot force such a creditor to release such property from a seizure he has caused to be levied, nor can it order the erasure of such creditor's judicial mortgage.

*Appeal from the Civil District Court.   Tissot, J.*

*Sambola & Ducros* for the succession.

*J. O. Nixon, Jr.*, for appellant.

ROGERS, J.—Marie Saux, wife of Jean Marie Tujague, died in this city on September 30, 1881; there existed between her and

her surviving husband a community of acquets and gains.  After her death, R. M. Flaut, the appellant, instituted suit against Tujague, the surviving husband, and obtained judgment against him on December 2, 1881, for $700.  The obligation sued on was a debt due by the community.  Appellant issued a writ of *fieri facias*, and to make the amount thereof seized real estate, inventoried as community property and appraised at $3,500.

Tujague had obtained letters of tutorship of his minor children, and by virtue thereof (*ex-officio*) administered the estate of his deceased wife; he obtained from the court an order of sale and had the property advertised.  It was adjudicated at public auction for $3,500.  The judgment in favor of Flaut having been recorded, operated as a judicial mortgage, and this fact, together with the seizure by writ of *fieri facias*, prevented the transfer of the property.

Tujague took a rule to set aside the seizure and to erase the inscription which operated as a judicial mortgage.

The proceeding by Flaut against Tujague was before one Division of the Civil District Court; the rule was taken by Tujague in the succession proceedings pending before another Division of that Court.  The rule was made absolute, cancelling the seizure and ordering the erasure of the judicial mortgage.  Flaut appeals.  The questions resulting are:

1st, urged by appellee.

This Court is without jurisdiction because the amount really in question is the value of property worth $3,500.  It is true the rule taken by appellee is in a proceeding where he seeks to effect a title to real estate of that value; but the issue that he brought about bore in no manner upon the title or value of the property, beyond the question of the judgment for $700, which appellee says is not disputed.

We are to determine whether the judgment of $700 is a judgment for which the community of Tujague and his late wife is responsible.

Whether it was proper for the Judge *a quo* to order the erasure of a mortgage of $700.

Whether a writ of *fieri facias*, based on a judgment, by a competent court, for $700, can be stayed and annulled on a simple rule to show cause by a Judge occupying and exercising a different jurisdiction,

These are all questions within the scope of our jurisdiction. We therefore refuse to dismiss the appeal; 33 La. An. 1351.

2d. What was the effect of the death of wife as to the rights of a community creditor to proceed against the surviving husband, and to seize the community property in satisfaction of his judgment. In Hawley, Public Administrator, vs. Crescent City Bank, 26 La. An. 232, the Supreme Court say:

"Upon the dissolution of the community by the death of the wife, the responsibility of the husband in regard to the community debts is not changed. He is absolutely and personally bound for their payment, and his separate property may be seized and sold for their acquittal. This being his position, he has under his control the community property which, by law, is expressly subjected to the payment of the community debts, and he has, so far as the final settlement and liquidation of the community after its dissolution is concerned, the same rights he had during its existence, because he is, after the dissolution, under the same responsibilities for the community debts that he was before the dissolution. It is but just that he should have those powers. *The community property continues under his control until the debts are paid.* Until their final settlement and discharge, the heirs have no absolute rights to the property of the community that can be legally recognized. Their interest in it continues contingent and uncertain, until, by the result of the final discharge of all obligations of the community, it is known whether or not there are assets remaining for partition between the survivor and the heirs of the deceased spouse. This doctrine has been uniformly recognized in our jurisprudence, as appears from a long chain of decisions," and the Court refer to 24 La. An. 534, 543; 25 La. An. 379; 25 La. An. 314; 23 La. An. 424, and to which authorities may now be added 26 La. An. 391, and Succession of Cason, 32 La. An. 792. In the latter, recently decided,.

the Court say: "As to the community creditors, they are under no necessity to provoke its liquidation through the medium of the wife's succession, because it is settled they may disregard the wife's interest, and proceed directly against the community property in the possession of the husband, contradictorily with him alone."

"In the case of the dissolution of the community by the prior death of the wife, her succession or heirs have no valuable interest in the community property."

It is true, as contended by appellee, that "this legal or conjugal partnership is a legal entity; a partnership *sui generis;* that it must be considered as an ideal being, *être moral*, distinct from the persons who compose, having its rights and obligations, its assets, its liabilities, its debtors and its creditors;" 6 La. An. 441; but as it is a partnership created by express law, and not the result of a convention by consent of parties, it must be controlled in its effects by the express and peculiar provisions of law regulating it, C. C. 2807, declares the. community of property created by marriage is not a partnership."

While, therefore, it partakes of the nature of a partnership, there are "*very marked and* distinctive differences" between it and the rules governing partnerships. This, at once, declares itself from the position and rights of the husband in and to the community property.

He is the head and master of the community. He administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title without the consent and permission of his wife.

C. C. 2404. And further, both the wife and her heirs may exonerate themselves from the debts contracted during marriage by renouncing the partnership or community of gains. C. C. 2410.

These conditions flow from a definition given in the Civil Code to this community or partnership; it is a "community of property created by marriage," and is not a partnership; *it is the effect*

6

*of a contract* governed by rules prescribed for that purpose in this Code." C. C. 2817.

The authorities cited by appellee do not overrule these views; on the contrary, they are in full harmony with them.

It is not necessary to consider the other point raised by appellant. We are satisfied the District Judge erred in setting aside the seizure made by Flaut, by virtue of his judgment, and in the erasure of the inscription of his mortgage.

It is, therefore, ordered, adjudged and decreed that the judgment of the District Court be reversed, and it is now ordered that the rule taken by Tujague on February 7, 1882, be dismissed, with costs in both courts.